Case number 222041, USA v. Jason Kechego. Argument not to exceed 15 minutes per side. Mr. Shadd, you may proceed for the appellant. Good morning, your honors. May it please the court. Here this morning representing Mr. Jason Kechego, and I believe I've reserved four minutes for rebuttal if I may. Thank you. Your honors, I'd really like to address just one issue before the court today, and that is the first issue that's in my brief, the problems during the jury deliberation process and the jury verdict. And there's a couple of different sub-issues that go into each of those. But turning first to the jury deliberation process. So as this court's aware from reading the briefs, on the fifth day of deliberations, the jury foreperson tells the court, we've got problems and we've got significant problems. And then the foreperson actually lays out what all those problems are to the court. The court doesn't respond to a couple of the very big problems that should have caused a significant rumor hearing in this case. And that is kind of part 1A of why the jury verdict can't be respected in this case. So the foreperson says basically three things. One of them is that there's this fight going on and that she can't speak her mind and that everybody's shouting her down. And so we would concede that that's not an extrinsic type thing that goes to the jury. And those are the kind of things that actually occur during the jury process. And while the court can give some guidance to the jury on that, that's not going to get you a rumor hearing or doesn't require a rumor hearing. The problems come out are these two things. One is she says that the jury is literally physically divided. So at one point she says that part of the jury is in another room playing cards during deliberations. And then subpart B to that is at one point she says that she got so thrown off by the jury process that she put herself in a separate room during the jury deliberation process. So by my estimation that means that the jury who's allegedly deliberating is in three different rooms at this point. And at least one of those three rooms they're apparently not deliberating but they're playing cards. How is any of that external influence on the jury? Because the jury's not deliberating. Well they're internally not deliberating. They're not externally. I mean they're not playing cards with people other than the jurors. Well we don't know that. Because the court had no, he didn't do any rumor hearing on this so we don't know anything about what happened. In order to get a rumor hearing don't you have to come forward with something? Like some non-speculative reason to believe there's an external influence? So let me then go to part two which is she alleges that people took out their phones during the jury deliberation process. And that is during the deliberation process. Now we don't know what they looked up again because there was no inquiry. There was no hearing. We have no idea whether they looked up stuff about the case. Whether they were looking at the sports scores. We don't know because there was no hearing. And that's the problem. And you know fellow counsel rightly points out well Mr. Shadd doesn't point to what they were looking up and whether it was external or not. And I say that's absolutely right because there was never a hearing so that we could determine whether or not, whether they were looking up something related to the case or not. And quite frankly the, the all of this court's case law points to the fact that there should be a deliberative hearing to determine what in fact the jury was or was not doing. And that just wasn't done in this case. Don't, don't you have to have like something more than speculation? I know that some of the jurors are on their phones. But doesn't it have to be some indication that they were accessing external information? You could have that. I mean they could, they could say it. They could, another juror could have seen it. The foreperson might have heard it or known that. Don't you have to have more than just the fact that they're looking at their phones? I mean there's got to be some indication that the verdict has been impacted by an external influence. So, so we, we I'm asking the question. We do know that they were looking at their phones and we don't know what they were looking at. But that is because of two things. Number one, the district court in this case didn't inquire as to what was going on and what they were looking at on those phones. And the court did not allow either of the parties to examine or cross-examine juror number seven, the foreperson, to determine whether or not that there was some other evidence here. And in this court's case law says that that in linear, you know, when you have a member hearing there's some kind of minimum things that have to occur. One of those minimum things is that you have to give the parties an opportunity to inquire as to, as to the juror. And another one of those things is that it has to be a thoughtful, deliberative, and not rushed process. Was there really an ask for a Remmer hearing here though? There doesn't, number one, the director answer is there was not a direct ask for a Remmer hearing. But number two, there doesn't need to be. This court's case law is also clear that when a district judge has before it an allegation that there could be an external influence, the district court is required to hold a Remmer hearing. And that's not only in Remmer itself, but it's in the Ewing case that I cited too. And I believe it's in Corradato as well. But is there, was there even a request to suggest there should be a Remmer hearing here? There was never, there was never a request by any of the parties. But what there was... You're saying the binary standard doesn't apply to Remmer claims? I mean, we should just presume all claims, if there's any hint, any whiff, then all claims are preserved. Well, so in this case it wasn't a hint or a whiff, it was a direct allegation. But let's go further and say a hint or a whiff. If there is a hint or a whiff of an external influence on the jury, the district court has an affirmative duty to hold a Remmer hearing to determine whether or not there's a problem. You can cite us any case where say there's no more than, hey, some jurors whipped out their cell phones at some point during deliberations, that that's enough to require a Remmer hearing. I don't have that case, no. How about they just open a newspaper? I think, again, it is a problem, yes, because that's an indirect violation of what the district court told them to do, right? Right, but we have this Bailey case, it's admittedly an unpublished case, but there the court says jurors may have read a newspaper article about the gang involved in the case and that didn't present a coverable claim because it was mere speculation. That seems a lot closer than they were on their, I mean, for all we know they were playing Candy Crush. And again, that's the problem. We don't know because it wasn't inquired about. And so, you know, at a bare minimum, at a bare minimum, we think that the conviction needs to be overturned. At a bare minimum, there has to be a remand for a Remmer hearing in this case. You can't cite us any case on the sort of comparable of these facts that say that. Well, yes, so Ewing is actually a 2254 case. So it's a post-conviction case. And that was a, I believe, an internet search case. And so the district court in that case, there was no Remmer hearing and the district court actually granted habeas relief in that case and the court of appeals said, no, no, we're not going to grant habeas relief, but we do need to have a remand for an evidentiary hearing. And that's in the habeas setting. So if that's true in the habeas setting, it's got to be true on a direct appeal. Where, by the way, there were multiple objections to what was going on by defense counsel. And what were the facts in Ewing? What was the allegation? I think it was internet research was that case. They were doing internet research. But it was just a, it was a kind of nebulous internet research. It wasn't, I don't think there was any evidence of what they were finding. Okay. And that, and the allegations came up post-conviction, like two weeks, I believe, after the trial. If I recall the facts of that case correctly. I mean, counsel, here in your, I mean, you didn't, nobody's come up with interviewing the jurors post-decision here and having a juror say, oh yeah, we were checking on the facts of this case. No, absolutely. And I think there's a whole lot of problems with that. I don't think we're allowed to go and contact any juror without court approval at any time. Nobody's not court approval in this case either, did they? Correct. No, I agree with you there. But then that leads to the second part of this. So now we have this partial jury work that was forced by the district court. And it was, in fact, forced by the district court. You know, the rule says that a jury can come to the court and say, we have a partial verdict, but we don't have a verdict on everything. We want to give you our partial verdict. What happened here was the district court asked one juror, do you think you have a verdict on some of the issues? If so, you fill out this form on your own and I'll see if everybody else agrees to it. And so when the other 11 jurors are brought into the open court, they're being told, you've already got this agreement, I just need you to confirm it. And did Mr. Cachego agree to some of this procedure? I mean, if he said something to the effect that I leave it to the court's discretion. He did say that, but it's important that he thought it all the way up to this point. So both before they started interviewing juror number 7, Mr. Cachego's attorney on 4548 objected to the entire process, said it's anarchy in the courtroom and there needs to be a mistrial. After they interviewed juror number 7 on 4561, 4564, and 4567, Mr. Cachego's trial attorney again objected to the entire process, said that this is a problem and said that there needs to be a mistrial in this case. So I don't think it's fair to say that this issue was either waived or acquiesced to by counsel when after all of that, the court says here, and the literal court's words were, here's what I'm going to do. But he sought the mistrial, then the government had a suggestion, and then at that point, counsel said something to the effect, well, you know, leave it to the court's discretion. If I'm right. Yeah, I see my time's up, but if I can just answer your question. So it's interesting here because the government actually takes two positions at the district court level that they don't take here. And one is they say, we need to put the brakes on this and go research this issue. That's the first thing they do. And then the government specifically says, I don't think we can take a partial verdict under these circumstances. And so he didn't come out, and Cachego's counsel didn't say, I wholeheartedly agree with the government on this, but he didn't object to what the government said either. But when the court says, here's what I think I'm going to do, and Mr. Cachego's counsel says, I leave it to the court's discretion, isn't that a little bit like I withdraw my prior objection, or that's fine, or, I mean, I... Well, I disagree, and here's why. If you... Couldn't you say, I'll stand on my objection? Well, should have done that, absolutely. I know I would have done that. But, on four separate occasions, the defense counsel says, need a mistrial, need a mistrial, need a mistrial, and it's not like, here's what I think I'm going to do. Based on plain error, if not, I mean, maybe you didn't waive, but you didn't preserve, so then we'd be on plain error? So to the extent that plain error, that you could argue that, I think it would just be on issue 1B, right? What is 1B? 1B is the returning of the partial verdict.  Yeah, so that's... But that doesn't affect 1A. 1A is your rumor hearing. Yes. Okay. I see my time's up, unless there are any further questions. Thank you. Good morning, may it please the court, William Valancourt, appearing on behalf of the United States. I'd like to start by addressing the defendant's claim about the jury deliberations, pointing out that there are actually two distinct claims with different standards of review, the rumor claim and the partial verdict claim. The rumor claim, that's unpreserved and reviewed for plain error because the defendant never asked for a hearing. Now, the only factual basis for this claim was information that the jurors were using their phones during deliberations. But the problem with that is that the jurors were only told that they could not use their phones to talk about the case. There's no evidence here suggesting that that was happening. Even the juror, the foreperson that came out to complain about what was going on, didn't complain that that was happening and that jurors were using their phones for improper purposes. The reference really was that jurors were pulling out their phones and ignoring her, and that was part of her frustration because she felt she wasn't being listened to. In this case, the defendant is now just speculating that maybe there was some external influence, but that's just guesswork without any support in the record. In a phishing expedition, to try to find grounds is not enough to trigger a rumor hearing, even if the defendant had asked for one. To try to argue that simple phone use equates to extraneous information about the case would essentially establish a rule that a rumor hearing would be required in every case because every juror is going to be using their phones, whether it's to contact home to say when they'll be home for dinner or to check traffic or sports or the weather. That's why something more than mere phone use is required in order to trigger a rumor hearing. Turning to counsel's second argument regarding the assertion that the district court erred in accepting a partial verdict because the jury was still deliberating, first of all, the record is clear that the jury had reached verdicts as to some counts. The foreperson said so, and each juror confirmed as to each individual count that they'd agree on verdicts or to those verdicts that they did not agree, and then they individually confirmed each of the verdicts, whether it was guilty or not guilty. The court's action was well within the broad scope of its discretion to manage jury deliberations under Rule 31 because the rule prescribes no formalistic ritual that the court has to follow in order to accept a partial verdict. The court acted appropriately here. But the court doesn't even need to reach that question because once defense counsel found out that the jury had reached verdict on most of the counts, the defendant waived review by agreeing to the district court's course of action. And that's the, I leave it to your discretion language? Well, it's not just that. That's the first part of it. It starts with where the court suggests that let's see if they did in fact reach some verdicts, and they say yes, we're going to leave it to the court's discretion. And then after the court has learned from the juror that they have in fact reached verdicts on all of the counts but three, the judge says, well, here's the process that I'm going to follow about taking that. I'm going to have her fill out the form, we're going to go step by step, and the court asks defense counsel for their position on it. The court turns first to Castro's lawyer and explains step by step what's going on, and Castro's lawyer says yes, yes, yes, okay. And then Mr. Cachigo's lawyer jumps in and says, hey, just for the record, judge, I agree with the court's process procedure, but he gets cut off because the court is asking his clerk about do we have the verdict form. But we can tell, I mean, first of all, both counsel were always on the same page throughout this. So let's say if we were less comfortable with that partial sentence, since we don't have the whole sentence, do you think leave it to the court's discretion is a waiver or at least a non-objection so that we're at least on plain error? At the very least, we're on plain error. To me, it sounds like a waiver. It's basically saying we're in agreement with whatever you decide to do, judge. We're leaving it up to you. To me, that sounds like waiver. But even if you don't want to go down that, it's clearly forfeiture and plain error. Because at no point during the process do defendants ever object to this, and then even at the end when the court gives both counsel two opportunities to say anything else here on these findings, they have nothing. So I think at the very least, we have plain error. And when you look at the rule, the rule provides broad discretion to the court in how to deal with jury deliberations. Nothing in the rule governs how the court interacts with the jury. There's no evidence here that the court pressured the jury to prematurely return a tentative verdict and that the jury was still deliberating. Well, Mr. Schott's briefing suggests that the district court can take a partial verdict, but only when the jurors themselves sort of indicate we're at an impasse, but we've reached a partial verdict. What would you say to that? Well, there's nothing in Rule 31 that says that. All the rule says is that the jury may return a partial verdict. And in fact, the use notes to the pattern instructions about... I mean, I think he would say, yeah, the jury may return one, but the court may not demand one. The court's not demanding one, but the court can inquire of one, because the jury may not understand what a partial verdict is or that they could even issue a partial verdict. They will just know, well, we've deliberated. We haven't reached verdicts and everything, so we don't have verdicts. So the court says, well, you can do partial verdicts. Are there any counts here on which you have reached unanimous verdicts? And here, the foreperson, who generally is the individual who the court is dealing with, the foreperson affirmed that, yes, we've in fact reached unanimous verdicts on a majority of the counts. And then what the court does is then confirms with each individual juror as to each goes count by count, a painstaking polling to determine, okay, are you unanimous on these counts in reaching a verdict on those counts? And they agree that, yes, they're unanimous. And then only after that does the court proceed count by count to say, here's what the verdicts are, guilty or not guilty. And remember that the court had instructed the jury initially that only reach a verdict if you are unanimous in finding that the government has proven their case beyond a reasonable doubt. And that's what's happened here. The court acted within the broad scope of its discretion to manage these deliberations. So if there's no other questions, I'd ask you to affirm the judgment of the district court. Thank you. Thank you. Mr. Schott, we'll hear your rebuttal. Thank you, Your Honor. As to the taking of the partial verdict, I want to make three arguments to you. First is that with regards to the Rule 31 argument of it's up to the jury, not the judge, to do the partial verdict, I'm stealing that from the AUSA in the court below who made that argument to the judge that he can't do that. And so it starts, you know, at 4571 where the AUSA says you can't do this, Judge. And then the judge goes and does some research and comes back and says, well, there's this jury instruction 9.03 that allows me to tell the jury that they can provide with a partial verdict. And then the AUSA correctly points out, yes, Judge, but then that means they go back and deliberate and determine whether or not they can give you a partial verdict, not that you request one. None of that was done here. And that is another one of the problems with this case. So the second or the third part of this is that I cited this court in my reply brief to that Ross versus Yost case, and admittedly it is an unpublished case, but that it was the closest factually to what I could come up with in what is a very unusual occurrence in this case. So in that case there was a mistrial that was declared, and then when they went back to the jury room to look, they found a jury verdict form where some of the counts had been voted on as either guilty or not guilty, I think it was not guilty, and signed by all 12 jurors. And so then the defense counsel said, well, look, they've got a partial verdict on this, at least as to these counts, because all 12 jurors signed on it. And this court in the Yost case said no, and the reason for that is that so long as the jury is deliberating on some of the counts, they have the freedom to go back and change their mind as to other counts, and then they can then do something different than what they'd already done. The court deprived this jury of that, because the jury, the court asked one person, the foreperson of the jury, to fill out the jury verdict form, and then just asked the rest of them if they agreed with what she had already decided. That's sort of a typical in it to poll the jury. I guarantee you, Judge Gilman, you've never seen a poll of a jury like this with 11 people, where there's another one in another room waiting. Sometimes we have a verdict of 11 because there's people that have left the jury, but not where you have it separated like this. But surely the foreperson fills out the verdict form. I mean, they don't all go through and check 12 boxes. But they all sign it. They all sign their name at the end, every one of them. So with that, I would just ask that you, number one, reverse the conviction. If you don't want to do that, at least remand it for a rumor hearing. Thank you, Your Honors. Thank you. Thanks very much. Your arguments have been helpful to the court. We thank you both. And I think that concludes the oral argument portion of today's proceedings. This case is submitted, and the clerk may adjourn the court.